IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RAESHON STRICKLAND,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ASSOCIATED FOOD STORES, INC.,<br><br>　　　　　Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTIONS TO EXCLUDE<br><br><br>Case 1:23-CV-030<br><br>District Judge Ted Stewart<br>Magistrate Judge Dustin B. Pead |

This matter is before the Court on Defendant Associated Food Stores' ("AFS" or "Defendant") Partial Motion to Exclude Expert Testimony[1] and Plaintiff Raeshon Strickland's Motion to Exclude the Proposed Report and Testimony of Defendant's Expert Witness.[2] For the reasons discussed below, the Court will deny both Motions.

I. LEGAL STANDARDS

Federal Rule of Evidence 702 allows an expert to testify if the proponent has demonstrated by a preponderance of the evidence that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[3]

---

[1] Docket No. 34.

[2] Docket No. 37.

[3] Fed. R. Evid. 702.

Rule 702 imposes a gatekeeper obligation on the court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[4] The court "must first determine whether an expert is 'qualified by knowledge, skill, experience, training, or education to render an opinion.'"[5] Second, "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*."[6]

Rule 702 requires that expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue."[7] "The 'help the trier of fact' language . . . is a relevance test for expert testimony."[8] To be relevant, "expert testimony must logically advance a material aspect of the case . . . and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."[9]

"At the Rule 702 gatekeeping stage, district courts must avoid weighing credibility or persuasiveness of the competing experts' ultimate conclusions."[10] However, the court should "liberally admit expert testimony, and . . . has broad discretion in deciding whether to admit or exclude expert testimony."[11]

---

[4] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

[5] *Milne v. USA Cycling, Inc.*, 575 F.3d 1120, 1133 (10th Cir. 2009) (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001)).

[6] *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *Daubert*, 509 U.S. at 589.

[7] *Daubert*, 509 U.S. at 591 (citing Fed. R. Evid. 702).

[8] *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217 (10th Cir. 2016).

[9] *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (internal quotation marks and citation omitted).

[10] *Heer v. Costco Wholesale Corp.*, 589 F. App'x 854, 862 (10th Cir. 2014) (citation omitted).

[11] *Armstrong v. Sabin*, No. 2:20-CV-261-TS-DAO, 2021 WL 1530213, at *1 (D. Utah Apr. 19, 2021) (quoting *United States v. Ganadonegro*, 805 F. Supp. 2d 1188, 1197 (D.N.M.

Expert testimony, even if otherwise admissible, may be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[12]

## II. DISCUSSION

*a. Defendant's Motion to Partially Exclude*

Defendant seeks to exclude part of the expert report prepared by Plaintiff's expert, Dr. Louise F. Fitzgerald, Ph.D. ("Dr. Fitzgerald"). Dr. Fitzgerald's testimony pertains to "the nature, extent and causation of the [alleged] injures, damages, losses, and harms sustained by [Plaintiff]," among other things.[13] Defendant seeks to exclude only Part II of her report, which contains "a review of the scientific literature on sexual harassment: its nature, organizational causes, and its psychological consequences to the individuals who experience it."[14] Defendant does not challenge Dr. Fitzgerald's qualifications, but argues that Part II of the report is not reliable or relevant under Rule 702, and is unfairly prejudicial under Rule 403.

Defendant first argues that Part II of Dr. Fritzgerald's report is not relevant because it "provides academic theories of sexual harassment," with no "analysis specific to [Plaintiff] or

---

2011)); *United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995); *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 647 (10th Cir. 1991).

[12] Fed. R. Evid. 403.

[13] Docket No. 31, at 5.

[14] Docket No. 36-1, at 6; *see generally id*. at 7–14.

[Defendant]" regarding "the alleged emotional distress suffered by Plaintiff because of her employment at AFS,"[15] and because it will not "advance a material aspect of the case."[16]

Upon reviewing Part II, the Court concludes it is relevant. The "review of the scientific literature on sexual harassment" forms "the substantive basis for [Dr. Fitzgerald's] opinions,"[17] and understanding the basis of the expert's conclusions will assist the trier of fact. It is inconsequential that the academic theories do not contain "any part of the psychological evaluation of Plaintiff"[18] because those theories merely form the basis and contribute to the methodology of Dr. Fitzgerald's evaluation. When discussing relevance in *Daubert*, the Supreme Court said, "[t]he study of the phases of the moon, for example, may provide valid scientific 'knowledge' about whether a certain night was dark, and if darkness is a fact in issue, the knowledge will assist the trier of fact."[19] Likewise here, studies regarding sexual harassment, including its nature and organizational causes, and the effects on those that experience it, are relevant to the issues to be determined in this case.

Next, Defendant argues that Part II is unreliable because the summarized scientific literature therein is "only based on generalized studies of sexual harassment, not the particular facts at issue in this case," and as a result, "is not clear whether the research can reliably be

---

[15] Docket No. 34, at 3–4.

[16] *Id*. at 4 (quoting *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 n.2 (10th Cir. 2005)).

[17] Docket No. 36-1, at 6.

[18] Docket No. 34, at 4.

[19] *Daubert*, 509 U.S. at 591.

applied in the specific context of Plaintiff's employment at AFS."[20] Defendant cites to cases holding that an expert's opinion based on insufficient information may be unreliable.[21]

The studies found in Part II provide the scientific knowledge upon which Dr. Fitzgerald's conclusions are based in part and are not themselves conclusions about the case. Rather, and in addition to the studies, Dr. Fitzgerald's ultimate opinions rest on "the facts of the present case," and "methods of clinical science."[22] Specifically, Dr. Fitzgerald's report outlines the numerous pleadings, discovery, depositions, and other court documents that she reviewed when making her report.[23] Accordingly, there is no reason to suspect that Part II cannot be reliably applied to the specific context of Plaintiff's employment at AFS, nor that Dr. Fitzgerald's ultimate opinions are based on insufficient information.

Further, the question of whether scientific studies used by an expert "fit the facts of [the] case" and whether the expert could have relied on more "relevant scientific literature . . . goes to the weight, not the admissibility of evidence."[24] That is, even if Dr. Fitzgerald only testifies to Part II, without her ultimate conclusions and reference to and application of the relevant facts, such testimony could still be admissible under Rule 702.

In *Loecker v. Board of Trustees for Colorado Mesa University*,[25] the defendant argued that an expert's report and testimony should be excluded because it did "not consider the facts of

---

[20] Docket No. 34, at 5.

[21] *Id.; see e.g., Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013); *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009); *Nikolova v. Uni. of Tex. at Aus.*, 585 F. Supp. 3d 936, 946 (W.D. Tex. 2022)).

[22] Docket No. 36-1, at 5.

[23] *Id*. at 34–35.

[24] *Ruff v. Ensign-Bickford Indus., Inc.*, 171 F. Supp. 2d 1226, 1237 (D. Utah 2001).

[25] 671 F. Supp. 3d 1217 (D. Colo. 2023).

[the] case at all, let alone apply any principles discussed in the report to those facts."[26] There, the district court concluded that "Rule 702 does *not* bar expert reports or testimony . . . which does not apply the relevant expertise to the facts of the case at hand."[27] The court further concluded that Rule 702 "recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts."[28] "For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony 'fit' the facts of the case."[29]

Here, it appears the summarized scientific literature in Part II meets that standard. Defendant does not assert that Dr. Fitzgerald is unqualified or that the summarized studies are unsound or otherwise unreliable. As discussed above, the studies appear to fit the facts of the case and will assist the trier of fact regarding the relevant issues. To the extent Dr. Fitzgerald offers testimony at a trial that fails to meet the requisite standard, Defendant may object at that time.

Lastly, Defendant argues that Part II of Dr. Fitzgerald's report should be excluded because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury."[30] Specifically, Defendant asserts that, because

---

[26] *Id.* at 1220.

[27] *Id.* at 1221 (emphasis added).

[28] *Id.* (quoting Fed. R. Evid. 702 advisory committee's notes to 1972 amendment); *also see* Fed. R. Evid. 702 advisory committee's notes to 2000 amendments ("[I]t might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case.").

[29] *Loecker*, 671 F. Supp 3d at 1220 (quoting Fed. R Evid. 702 advisory committee's notes to 2000 amendments).

[30] Docket No. 34, at 6 (quoting Fed. R. Evid. 403).

Part II contains generalized studies unrelated to the specific facts of the case, the jury could be tempted to imply that AFS's working environmental may foster unlawful sexual harassment and that Ms. Strickland did not take advantage of AFS's reporting procedures.[31]

Defendant cites to *Loecker*, in which the plaintiff attempted to offer expert testimony relating to "race and gender stereotypes" in sports, including "how bias and stereotyping works at an organizational level," and "why organizations respond . . . differently to complaints made by female student athletes versus male student athletes."[32] There, the district court excluded the expert opinion under Rule 403 because: the testimony offered "f[ell] within a category of issues an average person can evaluate and understand without the assistance of an expert;"[33] and the proffered expert testimony related to female athletes biases which were different than those at issue in the case.[34] Dr. Fitzgerald's testimony does not have the same deficiencies.

Here, Part II discusses the causes of sexual harassment, emotional and psychological consequences of sexual harassment, and organizational climate for sexual harassment. Such testimony is materially different to that in *Loecker* in that the report discusses causes and effects of sexual harassment in the workplace, as opposed to general stereotypes. This distinction is significant because courts have excluded expert testimony involving gender stereotypes on the grounds that such testimony could be understood by a lay person.[35] However, other courts have

---

[31] *Id.*

[32] *Loecker*, 671 F. Supp. 3d, at 1221–22.

[33] *Id.* at 1222 (internal quotation marks and citation omitted).

[34] *Id.*

[35] *See e.g., Smith v. Colo. Interstate Gas Co.*, 794 F. Supp. 1035, 1044 (D. Colo. 1992) ("Gender and race discrimination are issues an average person can evaluate and understand without the assistance of an expert."); *Sanderson v. Wyo. Highway Patrol*, No. 18-CV-0016-SWS, 2018 WL 8131669, at *2 (D. Wyo. Dec. 17, 2018) (same).

determined that such testimony is admissible and would be helpful to the trier of fact.[36] Ultimately, because "[t]he court has significant discretion when considering the admission of expert testimony,"[37] and because the scientific studies cited to in Part II go beyond mere discussion of gender stereotypes, the Court finds Part II will help the trier of fact understand issues that are not "well within a layperson's common knowledge."[38]

Defendant's concern that the jury will be tempted to draw improper inferences without application of the specific facts of the case, can be addressed by "[v]igorous cross-examination, presentation of contrary evidence, . . . careful instruction on the burden of proof,"[39] and appropriate limiting instructions. Those "are the traditional and appropriate means of attacking shaky but admissible evidence."[40]

Based on the above analysis, the Court will deny Defendant's Motion to Exclude. To the extent Defendant has issues with Dr. Fitzgerald's specific testimony given at trial, Defendant may raise its specific objections at that time.

b. *Plaintiff's Motion to Exclude*

Plaintiff seeks to exclude Defendant's expert Dr. Nancy B. Cohn, Ph.D. ("Dr. Cohn") under Rule 702. Dr. Cohn was retained by Defendant to rebut and "point out the flawed logic" of

---

[36] *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 235 (1989) (discussing expert testimony admitted during trial involving "sex stereotyping"); *Tuli v. Brigham & Women's Hosp.*, Inc., 592 F. Supp. 2d 208, 214 (D. Mass. 2009) (permitting expert testimony in the "social framework analysis" regarding "sex stereotyping and discrimination").

[37] *Loecker*, 671 F.Supp. 3d at 1221 (citing *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962)).

[38] *Id.* at 1222 (internal quotation marks and citation omitted).

[39] *Daubert*, 509 U.S. at 596.

[40] *Id.*

Plaintiff's expert, Dr. Fitzgerald. Plaintiff does not challenge Dr. Cohn's qualifications, but argues her testimony is unreliable.

Plaintiff first argues that Dr. Cohn's report is "unreliable as it is neither tied to nor relies upon reliable facts or data of the case."[41] Plaintiff argues Dr. Cohn's report is unreliable because (1) she did not conduct a psychological evaluation of Plaintiff; (2) she did not ask to review the documentation from Plaintiff's expert's evaluation; (3) she did not understand the diagnostic importance of the specificity of certain trauma symptoms; and (4) her report contains certain factual errors and faulty assumptions.[42]

Regarding Plaintiff's first two arguments, Dr. Cohn's testimony does not seek to diagnose Plaintiff, but instead opines as to the purported flawed reasoning of Dr. Fitzgerald. Rule 703 provides that "[a]n expert may base an opinion on facts or data in the case *that the expert has been made aware of* or personally observed."[43] Therefore, the Court agrees with Defendant that it is reasonable for Dr. Cohn to rely on only the relevant documents available in the case, including Plaintiff's therapy records, Dr. Fitzgerald's report, pleadings, deposition transcripts, and other court filings.[44] The Court further agrees with Defendant that the mere fact Dr. Cohn did not review the underlying data of Dr. Fitzgerald's evaluation of Plaintiff, alone, does not cause Dr. Cohn's expert report as a whole to be unreliable under Rule 702. To the extent Plaintiff believes such undercuts the reliability of Dr. Cohn's opinions, she may point that out through cross examination.

---

[41] Docket No. 37, at 8.

[42] *Id.* at 8–9.

[43] Fed. R. Evid. 703 (emphasis added).

[44] *See Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 138–39 (S.D.N.Y. 2022).

Plaintiff's last two arguments assert conclusively that Dr. Cohn does not understand the diagnostic importance of the specificity of certain trauma symptoms and based her opinions on factual errors or faulty assumptions. The Court agrees with Defendant that, because "there is some support in the record for [Dr. Cohn's] assumptions" challenges to such factual and causal assumptions go to the weight, not the admissibility of the opinion.[45] Additionally, "the full burden of exploration of the facts and assumptions underlying the testimony of an expert witness is squarely on the shoulders of opposing counsel's cross-examination."[46] Accordingly, the reliability issues raised by Plaintiff regarding Dr. Cohn's report may be addressed then.

Next Plaintiff argues that Dr. Cohn's opinions are "lacking in acceptable methodology . . . and set[] inconsistent, erroneous, and impermissible standards."[47] The only issues identified in Plaintiff's expert rebuttal report that relate to the methods employed by Dr. Cohn are that Dr. Cohn did not personally evaluate Plaintiff and that Dr. Cohn did not ask to review the documentation from Dr. Fitzgerald's evaluation of Plaintiff.[48] Dr. Fitzgerald cites to the AAPL Practice Guideline for Forensic Assessment and the American Psychological Association's

---

[45] *See Graystone Funding Co., LLC v. Network Funding, L.P.*, 598 F. Supp. 3d 1228, 1237 (D. Utah 2022); *BC Tech., Inc. v. Ensil Int'l Corp.*, 464 F. App'x 689, 704 (10th Cir. 2012) ("The assumptions were certainly subject to debate but had sufficient evidentiary support to pass the admissibility threshold."); *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1524 (10th Cir. 1984) ("Although there may have been considerable evidence contradicting the expert's assumptions, his assumptions were not without support."); *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1224 (D. Colo. 2008) (holding that unless "the assumed fact [is] . . . critical to the methodology [such that] failure to ascertain the actual fact would render the application of the facts to the methodology unreliable . . . [t]he accuracy of the assumption is an issue for trial because it affects the weight of the opinion").

[46] *Aspen Highlands Skiing Corp* 738 F.2d at 1524 (quoting *Smith v. Ford Motor Co.*, 626 F.2d 784, 793 (10th Cir. 1980)).

[47] Docket No. 37, at 9.

[48] Docket No. 38-3, at 2.

("APA") Specialty Guidelines for Forensic Psychology in support of her opinion that Dr. Cohn was required to conduct her own independent evaluation of Plaintiff.[49]

For the same reasons discussed above, these arguments fail. Further, courts in the Tenth Circuit have found that "compliance with the APA Code does not dictate whether [the expert's] opinion testimony is admissible for *Daubert* purposes."[50] And finally, both the APA Guidelines and the AAPL Practice Guidelines contemplate and permit an assessment "limited to record review with no interview," followed with the recommendation that "[such] limitation . . . be discussed in the report and testimony, which should indicate why a personal interview was not performed."[51]

Lastly, Plaintiff asserts that Dr. Cohn's report is unreliable because it is "inconsistent with Supreme Court and other legal standards."[52] In support, Plaintiff cites to *Bazemore v. Friday*,[53] which, according to Plaintiff, "requires a defendant to make a showing by more than a mere conjecture."[54] As argued by Defendant, the holding in *Bazemore* is unhelpful to the disposition of this motion.[55] There, the Supreme Court was concerned with the lower court's use of the petitioners' expert statistical evidence as proof of discrimination at trial, and not with the admissibly of such under Rule 702.

---

[49] *Id*.

[50] *See Munoz v. FCA US LLC*, 495 F. Supp. 3d. 1008, 1012 (D.N.M. 2020).

[51] Docket No. 38-3, at 3; *see* APA ETHICAL PRINCIPLES OF PSYCHOLOGISTS AND CODE OF CONDUCT § 9.01(b)-(c) (2017).

[52] Docket No. 37, at 10.

[53] 478 U.S. 385 (1986).

[54] Docket No. 37, at 10.

[55] *See* Docket No. 54, at 8–10.

Based on the above analysis, the Court will deny Plaintiff's Motion to Exclude. Again, to the extent Plaintiff has specific objections to Dr. Cohn's testimony at trial, they may be raised at that time.

It is therefore

ORDERED that Defendant's Partial Motion to Exclude Expert Testimony (Docket No. 34) is DENIED. It is further

ORDERED that Plaintiff's Motion to Exclude the Proposed Report and Testimony of Defendant's Expert Witness, Nancy B Cohn, Ph.D. (Docket No. 37) is DENIED.

DATED this 30th day of September, 2025.

BY THE COURT:

_____
Ted Stewart
United States District Judge