IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RAESHON STRICKLAND,<br><br>            Plaintiff,<br><br>v.<br><br>ASSOCIATED FOOD STORES, INC.; and DOES 1 through 50 inclusive,<br><br>            Defendants. | MEMORANDUM DECISION AND ORDER GRANTING AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 1:23-cv-00030-TS-DBP<br><br>District Judge Ted Stewart<br>Magistrate Judge Dustin B. Pead |

This matter is before the Court on Defendant Associated Food Stores, Inc.'s Motion for Summary Judgment.[1] For the reasons discussed below, the Court will grant the Motion in part. The Court will also order the parties to engage in a judicial settlement conference pursuant to DUCivR 16-2.

## I. BACKGROUND

On March 15, 2023, Raeshon Strickland ("Plaintiff") filed suit against Associated Food Stores, Inc. ("AFS") alleging violations of Title VII of the Civil Rights Act (Count I), discrimination under 42 U.S.C. § 1981 (Count II), and Intentional Infliction of Emotional Distress (Count III).[2] The Court previously dismissed Count III.[3] Plaintiff alleges that Defendant maintained a hostile work environment, and discriminated and retaliated against her, on the basis of her sex or race.

---

[1] Docket No. 42.

[2] Docket No. 2.

[3] Docket No. 21.

The following facts are generally undisputed. Plaintiff was hired by AFS in early 2020, promoted in March of the same year, and performed her work in a satisfactory manner.[4] During her tenure with AFS, Plaintiff made numerous complaints to various supervisors and managers regarding either race- or sex-based harassment.[5] Such complaints were made starting sometime in early 2020, shortly after she was hired, through her last day at AFS on November 9, 2021.[6] Plaintiff complained of sex-based harassment by Marvin Downard ("Downard"), Plaintiff's supervisor and a member of AFS's management; race- and sex-based harassment by David Varela ("Varela"), Plaintiff's co-worker; and sex-based harassment by Shane Parker ("Parker"), another co-worker. She also complained that the workload distribution system was racially discriminatory.[7] However, the parties dispute certain details regarding the timing and content of Plaintiff's complaints.

On November 9, 2021, Plaintiff met with head of human resources Danna Allen ("Allen") to discuss her complaints, and Allen stated that AFS would initiate an investigation.[8] After her meeting, Plaintiff was permitted to take the rest of the day off. The parties dispute whether Plaintiff and Allen set a date for her to return.[9]

On November 14, 2021, Plaintiff did not return to work and submitted a complaint via email to Allen and AFS's president.[10] On November 18 and December 9, 2021, Plaintiff filed a charge of discrimination with the Utah Antidiscrimination and Labor Division (UALD) and the

---

[4] Docket No. 71-2, at 4.

[5] Docket No. 43-1, at 80:10–81:2, 47:2–4, 63:12–23, 79:19–23, 79:16–18.

[6] Id. at 100:12–18; Docket No. 71-1, at 21.

[7] Docket No. 59-28, at 54:22–55:7, 59:3–21.

[8] Docket No. 71-1, at 22–23; Docket No. 43-1, at 103:19-22.

[9] Docket No. 71-1, at 23; Docket No. 43-1, at 103:10–18.

[10] Docket No. 71-1, at 25; Docket No. 43-17.

United States Equal Employment Opportunity Commission (EEOC).[11]  Additionally, on December 9, 2021, Plaintiff sent a complaint via letter to the AFS board of directors and others, in which she reiterated her complaints of sexual and racial harassment and stated she considered her employment terminated, actively or constructively.[12] Defendant asserts it did not consider her employment terminated at this point.[13] Between November 19 and November 29, 2021, Defendant thrice requested that Plaintiff inform AFS of her intention or desire to return to work for AFS, to which Plaintiff never responded.[14]

On December 22, 2021, Defendant notified Plaintiff's counsel that AFS had completed its internal investigation and taken appropriate corrective action.[15] On January 28, 2022, still with no response from Plaintiff regarding her intent to return to work, Defendant sent a letter to Plaintiff informing her that her employment was terminated and classified as a "voluntary quit."[16]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material

---

[11] Docket No. 59-14; Docket No. 59-17.

[12] Docket No. 59-16.

[13] *See* Docket No. 71-1, at 30–35.

[14] Docket No. 59-13.

[15] Docket No. 43-27 ¶ 4; Docket No. 43-27 Ex. 1.

[16] Docket No. 43-21; Docket No. 43-8 ¶¶ 19–20.

[17] Fed. R. Civ. P. 56(a).

fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented."[18]

Defendant, as the moving party, has the burden to show the facts are undisputed. "Once this initial burden is met, it becomes the burden of the non-moving party to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could return a verdict for the nonmoving party."[19] "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record. . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute. . . ."[20]

When evaluating a motion for summary judgment, the facts are to be construed in a light most favorable to the non-moving party.[21] Summary judgment "is warranted only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[22]

### III. DISCUSSION

#### A. Defendant's Objections to Plaintiff's Declaration

As a preliminary matter, Defendant objects to various factual allegations raised by Plaintiff in her Declaration that was filed with and relied on in her Response to Defendant's Motion for Summary Judgment.[23] Defendant contends that "Plaintiff primarily relies on her own

---

[18] *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

[19] *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1428 (10th Cir. 1996).

[20] Fed. R. Civ. Pro. 56(c)(1).

[21] *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).

[22] *Herrera v. Lufkin Indus. Inc.*, 474 F.3d 675, 685 (10th Cir. 2007) (internal quotation marks and citation omitted).

[23] Docket No. 71-1, at 9–15, 19–20, 32–33; Docket No. 71-2, at 4, 5, 6, 7, 10, 12–13, 14–16.

self-serving declaration in an improper attempt to create sham issues of fact to defeat AFS's Motion."[24] Accordingly, Defendant asks the Court to disregard Plaintiff's Declaration.

The Tenth Circuit holds that courts can "disregard a contrary affidavit [in considering a motion for summary judgment] when they conclude that it constitutes an attempt to create a sham fact issue."[25] In doing so, a court should consider the following factors: "whether the affiant was cross-examined during [her] earlier testimony, whether the affiant had access to the pertinent evidence at the time of [her] earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain."[26]

Plaintiff raises several factual allegations in her Declaration that she failed to mention or said she could not recall in her deposition despite careful cross-examination by Defendant regarding those specific allegations.[27] Further, "as a participant in the alleged conversations [constituting the newly raised factual allegations]," Plaintiff "clearly had access to the relevant evidence at" the time of her deposition.[28]

Accordingly, for purposes of this Motion, the Court will strike the following factual allegations raised by Plaintiff in her Declaration. First, that after raising a complaint to Tony

---

[24] Docket No. 71, at 5.

[25] *Juarez v. Utah*, 263 F. App'x 726, 734 (10th Cir. 2008) (citing *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) ("[T]he utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony.")).

[26] *Id*. (internal quotation marks and citation omitted).

[27] *See id.* at 734 (affirming the district court's exclusion of the plaintiff's affidavit because "[i]n her deposition, [the plaintiff] either failed to mention or directly contradicted many of the essential claims in her affidavit—in short, the affidavit differs substantially from the deposition").

[28] *Franks*, 796 F.2d at 1237.

Merrill ("Merrill"), she never told Merrill she would follow up if she needed anything else.[29] This directly contradicts Plaintiffs deposition testimony during which she agreed that if she experienced any of the same issues complained of, that she should speak with Merrill again.[30] Second, that shortly after being hired, she was approached by Downard to attend an off-site team gathering at which the only people present were Plaintiff and Downard.[31] Plaintiff never testified regarding this otherwise significant alleged instance of harassment despite being asked to describe all incidents of harassment and whether there were any additional incidents that had not been covered.[32]

The other factual allegations that Defendant alleges are designed to create sham factual disputes are either immaterial and not relied on by the Court in ruling on this Motion or are sufficiently supported.

B.  <u>Title VII Claims</u>

The precise claims that Plaintiff alleges under Title VII are somewhat unclear.[33] From her Complaint and the facts alleged therein, the Court finds three cognizable Title VII claims: discrimination, hostile work environment, and retaliation.

*1. Discrimination*

Plaintiff alleges she was discriminated against and received disparate treatment on the basis of her sex in violation of Title VII. "A plaintiff proves a violation of Title VII by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell*

---

[29] Docket No. 59-2 ¶ 49.

[30] Docket No. 43-1, at 61:1–7.

[31] Docket No. 59-2 ¶¶ 18–19.

[32] Docket No. 43-1, at 78:1–79:8.

[33] *See* Docket No. 2, at 18.

*Douglas Corp. v. Green.*[34] "Usually, a plaintiff will not have direct evidence of discrimination and will establish her claims through circumstantial evidence."[35]

Because Plaintiff presents no direct evidence, her claims are subject to the *McDonnell Douglas* burden shifting framework, under which she must first "prove a prima facie case of discrimination."[36] "Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action."[37] "If the employer does so, the burden shifts back to the plaintiff to show that there is a genuine issue of material fact as to whether the employer's proffered reasons are pretextual."[38]

"[T]he precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic."[39] In this context, to prove a prima facie case of discrimination plaintiff must present evidence that: "(1) she is a member of a protected class, (2) she suffered an adverse employment action, and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination."[40]

It is undisputed that Plaintiff is a member of a protected class. The parties dispute whether Plaintiff has produced sufficient evidence of an adverse employment action, and if so,

---

[34] *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

[35] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1137 (10th Cir. 2024) (internal quotation marks and citation omitted).

[36] *Khalik*, 671 F.3d at 1192.

[37] *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citation omitted).

[38] *Id.* (citation omitted).

[39] *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 310–11 (2025) (internal quotation marks and citation omitted); *PVNF*, 487 F.3d at 800 (10th Cir. 2007) ("[T]he initial burden . . . varies depending on the type of adverse action the employee alleges was discriminatory."); *Walkingstick Dixon v. Okla. ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321, 1335 (10th Cir. 2025) (explaining the many "variations" of the prima facie case).

[40] *McNellis,* 116 F.4th at 1139 (quoting *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015)); *PVNF*, 487 F.3d at 800.

whether there is sufficient evidence that it occurred under circumstances giving rise to an inference of discrimination.

"The longstanding rule in [the Tenth Circuit] has been to liberally define the phrase adverse employment action."[41] The term includes "tangible employment actions" such as "those acts that constitute a . . . change in employment status," and "decision[s] causing a . . . change in benefits," including "monetary losses in the form of wages or benefits," but is not limited to those acts.[42]

Unhelpful to this determination is that fact that Plaintiff's arguments regarding adverse employment action are underdeveloped and unorganized.[43] First, Plaintiff asserts that she suffered an adverse employment action when she "was told not to come into work," "her pay was cut off," and "was denied administrative pay."[44]

Defendant asserts that Plaintiff cannot point to evidence creating a genuine dispute on the issue of adverse employment action. Defendant argues that, contrary to Plaintiff's contention, Plaintiff was placed on paid administrative leave and was never terminated, but rather she voluntarily resigned, neither of which are adverse employment actions.

---

[41] *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032 (10th Cir. 2004) (internal quotation marks and citation omitted).

[42] *Id*. at 1031–33; *see EEOC v. JBS USA, LLC*, 339 F. Supp. 3d 1135, 1176 (D. Colo. 2018) ("Suspensions and terminations are adverse employment actions under Tenth Circuit precedent."); *see also Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 355 (2024) (clarifying that a plaintiff does not show that the harm was "significant," "serious," substantial," or any other "similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar").

[43] *See* Docket No. 2 ¶¶ 67–68, 77, 80, 83; *see also* Docket No. 58, at 66–69.

[44] Docket No. 58, at 69.

Regarding Plaintiff's exclusion from work, it is undisputed that Plaintiff was told to remain at home during the pendency of the investigation into her allegations[45] and that Plaintiff acknowledged that she was on leave.[46] But, the Tenth Circuit has held that placement on leave, alone, is not an adverse employment action.[47] Regarding denied or withheld paid leave, Plaintiff testified that her pay was cut off from November 9, 2021, and presented undisputed evidence that administrative pay was not issued until late December or January. Although delayed, pay was eventually issued for the time Plaintiff remained at home,[48] and a delay in benefits, alone, is not considered an adverse action.[49]

While courts have recognized there may be circumstances in which suspension or placement on leave, paid or unpaid, can rise to the level of adverse employment action,[50] the

---

[45] Docket No. 71-2, at 17.

[46] Docket No. 43-16, at 2.

[47] *Lincoln v. Maketa*, 880 F.3d 533, 542 (10th Cir. 2018) ("[W]e do not regard placement on paid administrative leave as clearly established adverse employment action."); *Brown v. Austin*, 13 F.4th 1079, 1091–92 (10th Cir. 2021) (reiterating that placement on paid administrative leave, where employee loses no pay or benefits, is not materially adverse); *Juarez*, 263 F. App'x at 737; *Baker v. City & Cnty. of Denver*, No. 14-CV-02468-REB-CBS, 2016 WL 54110, at *10 (D. Colo. Jan. 5, 2016) ("[A] brief paid administrative leave generally is not an adverse employment action.").

[48] Docket No. 71-2, at 20–21.

[49] *Garcia v. Bd. of Regents of the Univ. of N.M.*, No. CIV 09-0203 RB/RHS, 2010 WL 2606285, at *8 (D.N.M. June 2, 2010) ("[A] short delay in salary or overtime payment is an inconvenience, and not an adverse employment action.") (citation omitted); *Simmons v. Potter*, No. 08-CV-02593-WYD-KLM, 2010 WL 3002038, at *9 (D. Colo. July 29, 2010) (holding that payments delayed for around three-and-a-half months are "brief delays [which] are not 'adverse employment actions'"); *Coefield v. GPU*, 125 F. App'x 445, 449 (3d Cir. 2005) (finding that a promotion delayed for 90 days was not an adverse employment action); *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 301–02 (7th Cir. 2004) (finding that a two-month delay in payment for overtime was not an adverse employment action).

[50] *Lincoln*, 880 F.3d at 542 (describing that some circuits have concluded that placement on paid leave can amount to adverse employment action, but that no circuit "ha[s] established any clear guidance on where to draw the line between adverse and non-adverse paid administrative leave"); *Kennedy v. Gen. Motors Corp.*, 226 F. Supp. 2d 1257, 1265 (D. Kan. 2002) (reaffirming that suspension, even if subsequently withdrawn, can be adverse if the initial

Court does not have a basis to find that such circumstances exist here, as Plaintiff has failed to make any such argument. Rather, the sum of Plaintiff's argument is a conclusory allegation that an "adverse employment action is present"[51] coupled with a laundry list of citations to the record that are largely not probative of nor relevant to adverse employment action.[52]

The plaintiff bears the burden to "set forth specific facts . . . from which a rational trier of fact could find for the nonmovant."[53] But, "[m]ere conclusory allegations . . . are . . . insufficient to defeat or support a motion for summary judgment."[54] Thus, even when viewing the evidence in a light most favorable to Plaintiff, at most, the citations provided establish that Plaintiff was told to remain at home during the investigation and that it was unclear whether or when she would be issued administrative pay, both of which, without more, are insufficient to support a reasonable jury's finding that these actions altered the terms and conditions of Plaintiff's employment. Accordingly, Plaintiff has failed to show that exclusion from the workplace, together with the delay in pay, constitutes adverse employment action.

Second, Plaintiff alleges that she suffered an adverse employment action when she was actively or constructively discharged on or around December 9, 2021. However, as above, her

---

decision was based on an unlawful motive); *Ross v. Pentair Flow Techs*., Inc., No. 19-2690-SAC, 2021 WL 4134317, at *9 (D. Kan. Sept. 10, 2021) ["[A] suspension with pay may sometimes rise to the level of an adverse employment action."); *Collazo v. Cnty. of Suffolk*, 163 F. Supp. 3d 27, 44 (E.D.N.Y. 2016) (holding that a thirty-day suspension without pay constitutes a materially adverse change in the conditions of the plaintiff's employment); *Dahlia v. Rodriguez*, 735 F.3d 1060, 1079 (9th Cir. 2013) (placement on paid administrative leave, along with forfeiture of on-call and holiday pay and loss of employment opportunities, was an adverse employment action); *Michael v. Caterpillar Fin. Servs.*, 496 F.3d 584, 596 (6th Cir. 2007) (placement on paid administrative leave for four days, coupled with placement on a 90–day performance plan, was an adverse employment action).

[51] Docket No. 58, at 69.

[52] *See id*.

[53] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

[54] *Luttjohann v. Goodyear Tire & Rubber Co.*, 938 F. Supp. 694, 696 (D. Kan. 1996).

argument is conclusory, underdeveloped, and difficult to parse.[55] To the contrary, the undisputed

facts demonstrate she was neither actively nor constructively discharged.

"An actual discharge occurs when the employer uses language or engages in conduct that

would logically lead a prudent person to believe [her] tenure has been terminated."[56] Here,

Defendant took no action, nor used any language that would lead Plaintiff to draw a reasonable

inference that she was actually terminated on that date. Rather, the undisputed evidence shows

Defendant requested that Plaintiff decide whether she would return to work. For example,

Defendant informed Plaintiff's counsel via email that AFS did not intend to take any

employment action until a full investigation had been completed.[57] Additionally, Defendant

requested that Plaintiff inform AFS if she intended to return to work after the investigation on

multiple occasions, and Plaintiff never responded.[58] Within these same emails, Defendant also

called Plaintiff a "good worker," and a "valuable part of the team."[59]

Based on the above, a prudent employee could not logically conclude that their

employment had been actively terminated.

---

[55] *See* Docket No. 2 ¶ 67; *see also* Docket No. 58, at 66–71.

[56] *Fischer v. Forestwood Co.*, 525 F.3d 972, 979–80 (10th Cir. 2008) (cleaned up) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 88 (2nd Cir. 1996); *Pennypower Shopping News, Inc. v. NLRB*, 726 F.2d 626, 629 (10th Cir. 1984) ("The test of whether an employee has been discharged depends on the reasonable inferences that the employee could draw from the statements or conduct of the employer.") (citation omitted).

[57] Docket No. 59-13, at 3. ("[N]otwithstanding [Plaintiff's] failure to show up for work this week we do not intend to take any employment action until we have been able to conduct a full investigation.").

[58] *Id*. at 6 ("I will also renew my inquiry to you regarding Raeshon's desires. Does she want to return to work for AFS or does she plan to seek alternative employment? In either case, knowing her goals will help you and I craft a resolution.").

[59] *Id*. at 4; Docket No. 71-2, at 4.

Constructive discharge occurs "when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign," and is evaluated under an "objective, totality of circumstances standard."[60] "Plaintiff must show that, at the time of [her] resignation, [her] employer did not allow [her] the opportunity to make a free choice regarding [her] employment relationship."[61] The plaintiff's burden in establishing constructive discharge is substantial.[62]

Here, Plaintiff alleges that AFS's working environment, including the alleged sexual harassment, created conditions so intolerable that she was constructively discharged. However, the undisputed evidence establishes that, at the time Plaintiff considered herself constructively discharged, she was no longer subject to the alleged intolerable conditions, and that she had other reasonable alternatives in lieu of and prior to resigning.

Plaintiff alleges she was constructively discharged on or around December 9, 2021. But Plaintiff was removed from the workplace on November 9, 2021, and likewise by extension, was

---

[60] *Fischer*, 525 F.3d at 980 (internal quotation marks and citation omitted); *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004) (holding that "a plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged" and whether a resignation is voluntary in involuntary depends on whether the "[w]orking conditions [are] so severe that the plaintiff simply had no choice but to quit" as opposed to mere "difficult or unpleasant" conditions) (internal quotation marks and citation omitted); *Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1270 (10th Cir. 2004) (noting that courts should ask "whether the employee had any other reasonable choice but to resign in light of those actions").

[61] *Exum*, 389 F.3d at 1135 (citation omitted).

[62] *Fischer*, 525 F.3d at 980 (citing *PVNF*, 487 F.3d at 805); *Lockheed Martin Corp. v. Admin. Rev. Bd., U.S. Dep't of Lab.*, 717 F.3d 1121, 1134 (10th Cir. 2013) ("Establishing a constructive discharge claim requires the showing of an even more offensive and severe work environment than is needed to prove a hostile work environment."); *Tran*, 355 F.3d at 1270–71 ("[C]onduct which meets the definition of 'tangible employment action' or an 'adverse employment action' is not necessarily sufficient to establish a constructive discharge because a constructive discharge requires a showing that the working conditions imposed by the employer are not only tangible or adverse, but intolerable.").

taken out of the alleged intolerable working conditions. Thus, Plaintiff could not have felt compelled to resign on or around that date as a result of such conditions because she was no longer subject to them. Additionally, Plaintiff had a reasonable alternative prior to resigning, namely, waiting for the results of the investigation and corrective action. Accordingly, the Court finds Plaintiff has not presented sufficient evidence of actual or constructive discharge.

Plaintiff seemingly presumes that "her pleadings and deposition testimony contain[] facts sufficient to raise genuine issues of material fact" regarding adverse employment action.[63] But, "district courts[] have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record . . . and make a party's case for it."[64] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial [because] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[65] Based on the above analysis, Plaintiff has not presented sufficient evidence of an adverse employment action. Therefore, the Court will grant Defendant's Motion on this claim.

### 2. *Hostile Work Environment*

Plaintiff alleges both race- and sex-based harassment creating a hostile work environment in violation of Title VII. To succeed on a hostile work environment claim, Plaintiff must show: "(1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the

---

[63] *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996) (internal quotation marks and citation omitted).

[64] *Adler,* 144 F.3d at 672; *see Rocky Mountain Wild, Inc. v. United States Forest Serv.*, 56 F.4th 913, 927 (10th Cir. 2022) ("Judges are not like pigs, hunting for truffles buried in briefs.") (internal quotation marks and citation omitted).

[65] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

harassment was based on [a protected characteristic]; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment."[66]

"A hostile work environment claim is 'composed of a series of separate acts that collectively constitute one unlawful employment practice.'"[67] But "Title VII does not establish a general civility code for the workplace. Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim."[68] "To survive summary judgment on a claim alleging a . . . hostile work environment, the plaintiff must show that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and that the victim "was targeted for harassment because of [her protected characteristic]."[69]

"The applicable test for a hostile work environment has both objective and subjective components. A dual standard asks both whether the plaintiff was offended by the work environment and whether a reasonable person would likewise be offended, and both must be proved."[70] "Courts determine whether an environment is hostile or abusive by looking at such factors as the frequency of the discriminatory conduct; its severity; whether it is physically

---

[66] *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1263 (10th Cir. 2005) (internal quotation marks and citation omitted)).

[67] *Throupe v. Univ. of Denver.,* 988 F.3d 1243, 1251 (10th Cir. 2021) (quoting *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

[68] *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (quoting *Morris v. City of Colo. Springs*, 666 F.3d 654, 663–64 (10th Cir. 2012)).

[69] *Id.* (internal quotation marks and citation omitted).

[70] *Id*. (internal quotation marks and citation omitted).

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[71] Furthermore, "[t]he severity and pervasiveness evaluation of a hostile work environment claim is particularly unsuited for summary judgment because it is quintessentially a question of fact."[72]

Claims of hostile work environment based on race and sex can be treated separately or in the aggregate.[73] Plaintiff's Complaint and Response are unclear whether she wishes to bring them together or separate, so the Court will analyze them separately.

### a. Sex-based harassment

The parties do not dispute that: (1) Plaintiff is a member of a protected class based on her sex, (2) she complained of being subject to sexually harassing conduct, and (3) the conduct complained of was based on Plaintiff's sex. The parties dispute the fourth element as to whether Plaintiff has produced sufficient evidence such that a reasonable jury could find that an abusive working environment existed.

Defendant contends that the sexual harassment alleged by Plaintiff is not sufficiently severe or pervasive for purposes of a hostile work environment claim. The Court disagrees. When viewing the evidence collectively[74] and in the light most favorable to Plaintiff, a

---

[71] *Id.* at 957–58 (internal quotation marks omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

[72] *Id.* at 958 (internal quotation marks and citation omitted).

[73] *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1227 (10th Cir. 2022) (stating that "a trial court may aggregate . . . but [is] not mandate[d to] do so") (citation omitted).

[74] *PVNF*, 487 F.3d at 799; *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1262 (10th Cir. 1998) (observing that "the very term 'environment' indicates that allegedly discriminatory incidents should not be examined in isolation" and the fact-finder in a sexual harassment case should not "examine each alleged incident of harassment in a vacuum.").

reasonable jury could find that Plaintiff was frequently and repeatedly subject to severe and humiliating sex-based harassment that altered the terms and conditions of her employment.

First, regarding the duration, Plaintiff's Declaration and deposition testimony support that she was subjected to harassing conduct sometime in early 2020, and that such conduct permeated for over a year until her departure in November 2021.[75] Plaintiff alleges that shortly after being hired, Downard, one of Plaintiff's supervisors, began a "constant barrage of unwelcome, unwanted, pervasive, creepy and offensive verbal and visual comments,"[76] such as referring to her as "his girlfriend [and] future wife," calling her "sexy [and] beautiful," and touching her thigh, arm, and shoulder.[77] As a result, Plaintiff asserts that co-workers made false comments and spread rumors about her, including that she was "messing around" with Downard, and that she "slept with" him to get promoted.[78]

Regarding the frequency and severity, Plaintiff testified that Downard engaged in unwanted touching and grabbing of Plaintiff's body over 60 separate times,[79] frequently made in-person comments on Plaintiff's appearance,[80] asked Plaintiff to "send pictures" multiple times,[81] and on one occasion, called Plaintiff's personal cellphone around 15 times.[82] Plaintiff further testified that another co-worker, Varela, made jokes about Plaintiff being on her period and "dick

---

[75] Docket No. 59-2 ¶¶ 23–27, 37–38, 50–53, 55; Docket No. 43-1, at 48:9–49:22, 80:10–25.

[76] Docket No. 59-2 ¶¶ 23–24.

[77] Docket No. 43-1, at 48:11–17.

[78] *Id.* at 83:2–9; Docket No. 59-2 ¶ 26.

[79] Docket No. 59-28, at 48:9–17, 52:2–23.

[80] *Id.* at 48:25–49:1, 49:10–12.

[81] *Id.* at 50:15–18.

[82] Docket No. 43-1, at 83:21–84:1.

sucking" jokes by making a "sucking penis motion with his hand and mouth."[83] Plaintiff also produced evidence that an additional co-worker, Parker, requested that Plaintiff engage in sexual acts with Parker and his wife (who also works at AFS), and that Parker asked Plaintiff to send him pictures.[84]

In terms of embarrassment, in addition to rumors caused by Downard's behavior, Plaintiff testified that the allegedly harassing behavior often occurred "on the warehouse floor" and around co-workers, including the "dick sucking" and period jokes.[85] Evidence produced by Plaintiff supports that as a result of the alleged harassment, Plaintiff missed or left work on two occasions: on September 1, 2020, and on November 9, 2021.[86] Plaintiff stated that she felt "unsafe, scared, unprotected, and uncomfortable."[87] Plaintiff also testified that she contemplated quitting because she saw "nothing changing" after her complaints to Johnson and worried that by continuing to report the behavior "it [would] get worse . . . . instead of stopping," and that "[i]t [wouldn't] help, and [was] not worth it."[88]

In *E.E.O.C. v. PVNF, L.L.C.*,[89] the Tenth Circuit held that "[i]t is beyond dispute that evidence that a woman was subjected to a steady stream of vulgar and offensive epithets because of her gender would be sufficient to establish a claim under Title VII."[90]

---

[83] *Id.* at 97:19–24, 99:18–100:6; Docket No. 59-2 ¶ 50.

[84] Docket No. 43-1, at 101:6–20; Docket No. 59-8; Docket No. 59-2 ¶¶ 52–53.

[85] Docket No. 43-1, at 99:18–100:6, Docket No. 59-2 ¶ 50.

[86] Docket No. 59-6; Docket No. 59-2 ¶¶ 38–39.

[87] Docket No. 59-2, at ¶ 27.

[88] Docket No. 43-1, at 102:12–103:2; Docket No. 43-14.

[89] 487 F.3d 790.

[90] *Id.* at 799 (quoting *Winsor v. Hinckley Dodge, Inc.*, 79 F.3d 996, 1000 (10th Cir. 1996)).

Other courts have held that "uninvited and offensive touching, . . . making lewd remarks, and . . . speaking of women in offensive terms" is "discriminatory harassment sufficiently serious to alter the conditions of [a plaintiff's] employment and constitute[s] an abusive working environment."[91]

Based on the above analysis, the Court finds that Plaintiff has produced sufficient evidence that she was subjected to sex-based harassment with such severity and frequency that a reasonable jury could find that the workplace was "permeated with discriminatory intimidation, ridicule, and insult,"[92] and that a hostile work environment existed.

Defendant contends that it cannot be held liable because Plaintiff failed to take advantage of the remedial process in place for reporting claims of harassment. The *Faragher/Ellerth*[93] defense allows an employer to escape vicarious liability for a supervisor's harassing conduct upon the showing of "two necessary elements: (a) that the employer exercised reasonable care to prevent *and correct promptly* any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[94]

While the evidence established that Defendant exercised reasonable care to present sexually harassing behavior through its sexual harassment policy and training, "[i]n addition to reasonably acting to prevent sexual harassment, an employer claiming the *Ellerth/Faragher* defense is obliged to investigate and correct behavior of which the employer receives proper

---

[91] *Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 783 (1998) (discussing the district court's holding).

[92] *Throupe*, 988 F.3d at 1252 (internal quotation marks and citation omitted).

[93] *Faragher*, 524 U.S. at 807; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 745 (1998).

[94] *Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d 726, 745–46 (10th Cir. 2014) (emphasis added) (internal quotation marks and citation omitted).

notice through its harassment complaint procedures."[95] "[A]n employer's failure to remove a supervisor from close working proximity with a subordinate who has alleged sexual harassment against that supervisor might be seen as unreasonable."[96] In *Pinkerton*,[97] the Tenth Circuit found that an employer met this duty "by *immediately* investigating a report of sexual harassment, *promptly* removing the harassing supervisor from any workplace interaction with the employee when that report was found to be credible, and demoting, reassigning, or removing the supervisor after a thorough investigation sustained the employee's allegations."[98]

Defendant argues that it did not receive notice of Plaintiff's claims of sexual harassment until November 2021, at which point AFS launched an investigation and took corrective action based on the results of its investigation. However, Plaintiff's deposition testimony supports that Plaintiff made complaints to her supervisors regarding the allegedly sexually harassing behavior in early 2020 and various times thereafter until November 2021.[99] Evidence also shows that

---

[95] *Allen v. Salt Lake Cnty.*, 713 F. Supp. 3d 1171, 1186–87 (D. Utah 2024) (citing *Stapp v. Curry Cnty. Bd. of Cnty. Comm'r*, 672 F. App'x 841, 849 (10th Cir. 2016)); *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1062 (10th Cir. 2009) ("[T]he existence of a sexual harassment policy and training alone does not satisfy the employer's burden under the first prong of the *Ellerth/Faragher* defense because the employer not only must take reasonable care to prevent sexually harassing behavior but also correct promptly any such behavior.").

[96] *Pinkerton*, 563 F.3d at 1062; *see Vance v. Ball State Univ.*, 570 U.S. 421, 445–46 (2013) (holding that in addition to conduct by supervisors, employers are also liable for harassment by co-workers "by showing that the employer was negligent in permitting this harassment to occur").

[97] 563 F.3d 1052 (10th Cir. 2009).

[98] *Allen*, 713 F. Supp. at 1187 (emphasis added) (citing *Pinkerton,* 563 F.3d at 1062).

[99] Docket No. 43-1, at 61:11–25, 63:22–65:22, 79:24–81:2, 83:2–20, 100:12–21; Docket No. 71-2, at 7; Docket No. 59-6.

Plaintiff repeatedly complained of specific conduct, often by text message,[100] and that Downard was previously disciplined for unwanted touching of another female in 2013.[101]

Based on the above analysis, Plaintiff has presented sufficient evidence to show a genuine fact dispute exists as to whether Plaintiff was subject to sufficiently severe or pervasive harassment, and whether Defendant acted reasonably to promptly investigate and correct the alleged sexually harassing behavior. Accordingly, the Court will deny Defendant's Motion on Plaintiff's sex-based hostile work environment claim.

### b. Race-based harassment

Like Plaintiff's sex-based harassment claim, the parties do not dispute that (1) Plaintiff is a member of a protected class based on her race,[102] (2) she complained of unwelcome conduct,[103] and (3) the unwelcome conduct was based on Plaintiff's race.[104] As above, the parties dispute the fourth element regarding whether Plaintiff has produced sufficient evidence of severe or pervasive race-based harassment such that a reasonable jury could find that such behavior created an abusive working environment.[105]

To prove a race-based hostile work environment claim, Plaintiff must show "more than a few isolated incidents of racial enmity."[106] In *Bolden v. PRC Inc.*, the plaintiff, who was Black,

---

[100] Docket No. 59-2, at ¶¶ 23–24, 36; Docket No. 59-5; Docket No. 59-6; Docket No. 59-8.

[101] Docket No. 59-25, at 32:18-22.

[102] Docket No. 71-2, at 1.

[103] Docket No. 71-1, at 11–12; Docket No. 43-9.

[104] Docket No. 71-1, at 11–12; Docket No. 43-9.

[105] Docket No. 42, at 36–37.

[106] *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (internal quotation marks and citation omitted) ("Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.").

produced evidence that "two of his coworkers made overtly racial remarks": a reference to the "Ku Klux Klan," and the use of the "n-word."[107] In addition, the plaintiff was ridiculed with other rude names like "dickhead," and "dumbshit," and was even "violently pushed."[108] The Tenth Circuit noted that "[t]he blatant racial harassment of [the plaintiff] came from only two of his co-workers on a couple occasions . . . [and] the racial jokes and slurs were infrequent."[109] In considering the totality of the circumstances, including the general ridicule, the Tenth Circuit concluded that the plaintiff "ha[d] not presented evidence of a steady barrage of opprobrious racial comment as required to show a racially hostile work environment."[110]

In support of her argument, Plaintiff alleges racist comments were made to her and a co-worker, Scott Clayton ("Clayton"), and that AFS maintained discriminatory workload assignment system. Regarding the comments made to her, Plaintiff produced undisputed evidence that Varela called her the "n-word," and on multiple occasions asked whether she was eating fried chicken and watermelon for lunch.[111] Plaintiff also submitted a declaration by Mr. Clayton in which he alleges a co-worker made numerous racist remarks to him including "we like to keep our black people repressed," and use of the "n-word."[112]

These allegations, taken as true, are insufficient to support a finding of an abusive work environment based on race. Like *Bolden*, Plaintiff has presented evidence of isolated and infrequent racist comments made from two employees, as opposed to a "steady barrage."

---

[107] *Id*. at 549.

[108] *Id*.

[109] *Id*. at 551.

[110] *Id*. (internal quotation marks and citation omitted).

[111] Docket No. 59-28, at 53:6–11, 55:19–56:4; Docket No. 43-9.

[112] Docket No. 59-31 ¶ 6.

Although such remarks are undoubtedly discriminatory, it is insufficient for purpose of a hostile work environment because "[a] few isolated incidents of discriminatory conduct does not make the harassment pervasive."[113]

Regarding the workload distribution system, Plaintiff says that work assignments were made to the favored non-minority loaders because they were able to cherry pick and choose the good loads. However, the Court agrees with Defendant that this allegation fails to provide evidence of either race- or sex-based discrimination because the other "unfavored" loaders were all male and of various ethnicities and races, including white.[114]

Accordingly, Plaintiff has failed to produce sufficient evidence such that a reasonable jury could find the workplace harassment was racially pervasive. Therefore, the Court will grant Defendant's Motion on Plaintiff's race-based hostile work environment claim.

### 3. *Retaliation*

A claim of retaliation under Title VII is subject to the *McDonnell Douglas* burden-shifting framework, under which the plaintiff first has the burden to establish a prima facie case of retaliation.[115] To establish a prima facie case, a plaintiff must show "(1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between her opposition and the employer's adverse action."[116]

---

[113] *Throupe*, 988 F.3d at 1252 (internal quotation marks and citation omitted); *Hicks*, 833 F.2d at 1412 ("To establish a racially hostile work environment . . . plaintiffs must prove more than a few isolated incidents of racial enmity.") (internal quotation marks and citation omitted).

[114] Docket No. 43-1, at 55:3–18.

[115] *Walkingstick Dixon v. Okla. ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321, 1334 (10th Cir. 2025).

[116] *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).

Defendant does not dispute that Plaintiff engaged in protected opposition. However, the parties dispute whether Plaintiff has produced sufficient evidence of a materially adverse action and a nexus between her opposition and the adverse action. In support of the second element, Plaintiff again provides conclusory statements and unhelpful citations to the record. However, even assuming Plaintiff meets her burden on the second element, her claim fails on the third.

"To establish the requisite causal connection, Plaintiff must show that the decisionmakers took action against [her] out of a desire to retaliate for [her] formal discrimination complaints."[117] Plaintiff must show "that the desire to retaliate was the but-for cause of the challenged employment action."[118]

Here, Plaintiff's argument is severely lacking the substance needed to withstand summary judgment. The entirety of Plaintiff's briefing regarding this element is a conclusory allegation that "a connection between the protected activity and the adverse action is present," and that "[t]here is direct evidence of retaliation and a casual connection between [Plaintiff's] protected activities and the adverse employment action."[119] Again, Plaintiff provides a laundry list of citations that are wholly irrelevant on this issue.[120] In addition to failing to cite to relevant evidence, Plaintiff provides no supporting case law and does not even attempt to explain how the evidence cited to demonstrates a causal connection. As above, the Court declines to comb the record and make a party's case for it. In sum, Plaintiff failed to provide evidence sufficient such that a reasonable jury could conclude that the desire to retaliate was the but-for cause of the

---

[117] *Singh v. Cordle*, 936 F.3d 1022, 1043 (10th Cir. 2019).

[118] *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

[119] Docket No. 58, at 74.

[120] *See id*. Such citations are the exact same Plaintiff provides in support of her argument that she suffered an adverse employment action in the context of her discrimination claim.

challenged employment action. Accordingly, the Court will grant Defendant's Motion on this claim.

C. 42 U.S.C. § 1981

Section 1981 prohibits racial discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[121] To establish a prima facie case of discrimination under § 1981, a plaintiff must show: "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981."[122]

The Supreme Court recently clarified that "[t]o prevail [on a Section 1981 claim], a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."[123] In that case, the Supreme Court rejected that "a § 1981 plaintiff only bears the burden of showing that race was a 'motivating factor.'"[124] "That is, a plaintiff must demonstrate that race didn't just play some role in the defendant's decision-making process. To the contrary, a . . . plaintiff . . . must allege that race explained plaintiff's injuries."[125]

Although a claim involving discrimination under § 1981 is subject to the *McDonnell Doulgas* framework,[126] neither party submitted any briefing related to that analysis. Defendant argues that Plaintiff's claim fails as a matter of law because she failed to allege that race is the

---

[121] 42 U.S.C.A. § 1981(b).

[122] *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001).

[123] *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

[124] *Id.* at 332.

[125] *Galindo v. Taylor*, 723 F. Supp. 3d 1008, 1025–26 (D. Kan. 2024) (internal quotation marks and citations omitted) (cleaned up).

[126] *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226–27 (10th Cir. 2000).

"but for" cause of any alleged injury. Indeed, Plaintiff seemingly relies solely on the statutory text of § 1981 and fails to point to any specific evidence or facts to support that race was the but-for cause for any discriminatory action taken against her.[127]

The Tenth Circuit has explicitly clarified that § 1981 does not apply to sex discrimination, nor does it recognize a race plus sex claim under § 1981.[128] However, Plaintiff relies heavily on sex-based evidence in support of her claim. In sum, Plaintiff has failed to sufficiently support its §1981 claim such that a reasonable jury could find in favor of Plaintiff. Accordingly, the Court will grant Defendant's Motion on Plaintiff's § 1981 claim.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 42) is GRANTED in part and DENIED in part. It is further

ORDERED that the parties participate in a settlement conference pursuant to DUCivR 16-2(b) for alternative dispute resolution. A separate order will follow regarding the settlement conference.

DATED February 10, 2026.

BY THE COURT:

_____

Ted Stewart
United States District Judge

---

[127] *See* Docket No. 58, at 78–80; *See* Docket No. 2 ¶¶ 86–101.

[128] *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 971 (10th Cir. 1979) ("Section 1981 does not apply to sex . . . discrimination."); *Sales v. Res-Care, Inc.*, No. 318CV03591JFAJDA, 2021 WL 1186553, at *3 (D.S.C. Mar. 30, 2021) (noting that "a sex plus race claim is not viable under § 1981").